**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ANGEL JET SERVICES, LLC** | ) | **CASE NO.1:12CV298** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| Vs. | ) | |
| | ) | |
| **CLEVELAND CLINIC EMPLOYEE** | ) | **OPINION AND ORDER** |
| **HEALTH PLAN TOTAL CARE** | ) | |
| | ) | |
| **Defendant.** | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on Plaintiff Angel Jet Services, LLC's ("AJS") Motion for Discovery (ECF # 18). For the following reasons, the Court denies Plaintiff's Motion.

Plaintiff seeks to recover benefits under an employee health benefit plan governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1002 *et seq.* ("ERISA"). On May 3, 2012, Plaintiff filed its Motion for Discovery, contending that Defendant operated under a conflict of interest that tainted the appeals process, resulting in the denial of Plaintiff's claim.

1

**Background Facts**

Plaintiff Angel Jet Services, LLC ("AJS") is an air ambulance company that transports patients from one medical facility to another while providing in-transit medical care, including critical care nurses.  On July 7, 2010, AJS transported the minor child of Jason Springer from Utah to Cleveland, Ohio, where Springer had recently accepted a residency with the Cleveland Clinic.  As an employee of the Cleveland Clinic, Springer was a participant under the Cleveland Clinic's Employee Health Plan Total Care ("Plan") and his child was covered under the Plan as well.  According to Plaintiff, Springer attempted to obtain pre-approval for coverage of the costs of AJS's air ambulance services in transporting his child to Cleveland.  After the transport, AJS submitted a bill for its services totaling $340,100 to the Plan's administrator, Antares Management Solutions, Inc. ("Antares").  AJS was assigned Springer's rights under the Plan for payment.  Antares initially informed Plaintiff that the claim was approved, however, it later denied payment, contending Springer never obtained pre-approval before engaging the services of AJS.  Ultimately, the Plan paid for only ten percent of AJS's bill.  AJS now seeks discovery, contending that the Plan operates under a conflict of interest- i.e. Cleveland Clinic acts as Administrator of the Plan and is also the Payor under the Plan- and that the conflict of interest was a factor in denying full benefits to AJS for its air ambulance services.

Cleveland Clinic contends no discovery is warranted since it admits the inherent conflict.  Even though there is an inherent conflict of interest, Cleveland Clinic argues no discovery is needed because this is not a question of competing views on the medical necessity of treatment or denial of medical treatment or benefits related to medical treatment.  Instead, this case is simply a question of whether or not the policy in question precludes coverage for non-emergency

2

air ambulance services when no pre-approval has been obtained.  According to Cleveland Clinic, Plaintiff does not allege the air ambulance service was an emergency medical transport.

## Standard of Review

The Court applies the arbitrary and capricious standard of review where a policy cloaks the plan administrator with the discretionary authority to determine eligibility and construe the terms of a policy.  *DeLisle v. Sun Life Assurance Co. of Canada*, 558 F. 3d 440,440 (6th Cir. 2009) (Citing *Firestone Tire & Rubber Co. v. Burch*, 489 U.S. 101, 115 (1989)).  The arbitrary and capricious standard is the most deferential form of judicial review.  *Admin. Comm. of Sea Ray Employees Stock Ownership and Profit Sharing Plan v. Robinson*, 164 F. 3d 981, 989 (6th Cir. 1999).  The administrator's decision should be upheld if it is "the result of a deliberate, principled reasoning process" and "supported by substantial evidence."  *Glenn v. Metro. Life Ins. Co.*, 461 F. 3d 660, 666 (6th Cir. 2006), *aff'd,* 128 S. Ct. 2343 (2008).  The court must consider several factors, including the quality and quantity of medical evidence and the policy administrator's consideration of the Social Security Administrator's determination.  *Glenn*, 461 F. 3d at 666.  A possible conflict of interest due to the administrator's dual role is "but one factor among many that a reviewing judge must take into account."  *Glenn*, 128 S. Ct. at 2351.  Ultimately, the Court must determine whether the plan administrator's decision was rational. *Calvert v. Firstar Fin., Inc*., 409 F. 3d 286, 295 (6th Cir. 2005).

"Generally, a court reviewing a party's ERISA claim cannot consider evidence outside the Administrative Record." *Likas v. Life Ins. Co. of North America*,  222 Fed.Appx. 481, 485-486, (6th Cir. 2007) *citing Wilkins v. Baptist Healthcare Sys.,* 150 F.3d 609, 619 (6th Cir.1998).  "Limited discovery may be appropriate, however, when consideration of evidence is necessary to

resolve an ERISA claimant's procedural challenge to the administrator's decision." *Id.* This exception has been described by the Sixth Circuit as a "narrow" exception. *Putney v. Medical Mutual of Ohio*, 111 Fed.Appx. 803, 806 (6th Cir. 2004). "These procedural challenges include allegations that the administrator failed to provide due process or was biased in some way." *Likas*, at 486.

As a threshold issue, the Court must determine the standard of review applied to the denial of Springer's benefit under the Plan. In *Firestone*, the United States Supreme Court held, "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone*, 489 U.S. 956-57.

Here, the Plan gives Third Party Administrator, Antares, the authority to determine eligibility initially. The Plan then provides an appeals process with the ultimate decision to be made by the Cleveland Clinic Employee Health Plan Total Care or Health Plan Advisory Committee whose decisions are "final and binding." (A.R. 1 pg. CCEHP000068).

In a case wherein the employee health benefit plan was similarly structured, the Sixth Circuit determined that such a plan afforded the Plan Administrator sufficient discretion to warrant review using the arbitrary and capricious standard. In *Johnson v. Eaton Corp.*, 970 F.2d 1569, 1572 (6th Cir. 1992), the Sixth Circuit stated:

> That committee is also empowered to review the denial of claims, and its decision "shall constitute the final disposition under [the] Plan" of the claimant's case. Therefore, while the committee is not the first arbiter of a claimant's eligibility, the Eaton plan makes it the final one. In order to exercise this final authority, the committee members must certainly have been entrusted with the authority to exercise their judgment, or discretion, in interpreting and applying the eligibility

4

provisions.

Since the Cleveland Clinic has reserved similar authority for itself, the Court finds the Cleveland Clinic's Plan analogous to the plan before the Sixth Circuit in *Johnson* and finds it must apply the arbitrary and capricious standard of review to the decisions of the Plan. In this light, the Court will now consider Plaintiff's Motion for Discovery.

Since the United States Supreme Court, in *Glenn*, held that conflicts of interest are a factor that should be considered in ERISA cases, and further held that courts should not establish burden-shifting requirements on parties seeking discovery in ERISA cases, courts have wrestled with the question of when to allow discovery. The Sixth Circuit, in *Johnson v. Connecticut General Life Ins. Co.,* 324 Fed.Appx. 459, 466-467 (6th Cir. 2009), a post-*Glenn* ruling, provided the following guidance:

> We have noted in a few ERISA cases that discovery might have been appropriate under the circumstances. *See Kalish,* 419 F.3d at 507; *Calvert v. Firstar Fin., Inc.,* 409 F.3d 286, 293 n. 2 (6th Cir.2005). In other cases, we have affirmed the denial of discovery and explained that a "mere allegation of bias is not sufficient to permit discovery under *Wilkins'* exception." *Putney v. Med. Mut. of Ohio,* 111 Fed.Appx. 803, 807 (6th Cir.2004); *see also Likas v. Life Ins. Co. of N. Am.,* 222 Fed.Appx. 481, 486 (6th Cir.2007); *Huffaker v. Metro. Life Ins. Co.,* 271 Fed.Appx. 493, 504 (6th Cir.2008). Although Connecticut General argues that these cases should be interpreted to impose a threshold evidentiary showing of bias as a prerequisite to discovery under *Wilkins,* the Supreme Court's admonition in *Glenn* discouraging the creation of special procedural or evidentiary rules for evaluating administrator/payor conflicts of interest counsels against it. That does not mean, however, that discovery will automatically be available any time the defendant is both the administrator and the payor under an ERISA plan. The limitation on discovery recognized in *Wilkins* is a result of the determination that matters outside the administrative record are ordinarily not relevant to the court's review of an ERISA benefit decision. District courts are well-equipped to evaluate and determine whether and to what extent limited discovery is appropriate in furtherance of a colorable procedural challenge under *Wilkins.* Plaintiff offered more than a mere allegation of bias, and the district court did not abuse its discretion by allowing plaintiff to conduct limited discovery concerning

5

the conflict that existed in this case.

Thus, in its most recent pronouncement on the issue, the Sixth Circuit has determined that a plaintiff need not make some initial evidentiary showing of bias in order to merit discovery. Instead, Plaintiff need only assert a colorable challenge; then, it is left to the court's discretion whether limited discovery is necessary after considering case-specific factors.

Plaintiff presents several arguments in support of its request for discovery. First, Plaintiff contends Defendant first approved the payment, then rejected coverage due to the lack of pre-authorization. Plaintiff further alleges that the Plan misled Springer concerning the status of his enrollment in the Plan and blamed the denial of benefits on Springer's alleged failure to timely complete the enrollment paperwork. Springer demonstrated that he had, in fact, timely completed the paperwork. This, according to Plaintiff, establishes serious concerns on the credibility of the Plan. Furthermore, Plaintiff contends discovery is needed to aid in assessing the credibility of the Plan because the Plan asserted it would have used the services of its own air ambulance transport if such transportation had been authorized by the Plan. Plaintiff wants discovery on the existence of the Defendant's air ambulance services, its rates, and how Defendant calculated the amount it authorized as reasonable compensation for air ambulance services based on its own alleged air ambulance transportation rates. Finally, Plaintiff wants discovery regarding whether the Plan relied on the advice of counsel when it denied paying the full costs of Plaintiff's air ambulance services.

Defendant contends no discovery is necessary since this is not the typical ERISA case wherein the parties contest the necessity of some medical treatment, or favor the diagnosis of one physician over another. Instead, this is a simple dispute involving the plain language of the Plan

6

and whether the Plan requires pre-authorization or not. Defendant argues, in essence, that Plaintiff seeks to introduce complexity where none is required. Instead, the case presents a straight forward matter of interpretation of the Plan's coverage and coverage prerequisites.

Springer became an employee of Defendant on July 1, 2010, and Plaintiff transported Springer's child on July 7, 2010. Springer's child was born with a number of congenital medical issues requiring constant medical supervision and care. Given that the July 4th holiday occurred during the week, Defendant had only two business days to process Springer's work papers and pre-approve Springer's request for coverage of Plaintiff's air ambulance services.

Upon consideration of the arguments made by Plaintiff and Defendant, the Court denies Plaintiff's Motion for Discovery. The Court holds that the issue of bias or any inherent conflict of interest is of little importance to what appears to be purely a contract interpretation issue on the scope of covered services provided under the Plan and what prerequisites are required for coverage. While Defendant acknowledges the inherent conflict of interest when a Plan Administrator is also the Payor, the Court also finds that an equal conflict exists for Plaintiff in that Plaintiff AJS had a financial incentive to provide the service, without first obtaining preapproval, given the alleged disparity in the costs of its services compared to Defendant's own competing service. Furthermore, it would appear to have operated under the theory that it is easier to seek forgiveness than permission. By providing its ambulance service without first ensuring authorization, AJS eliminated the risk that the Plan might have authorized only those services of its own air ambulance or may have disputed the amount charged by AJS and thus, may have prevented Springer from hiring Plaintiff.

Therefore, the Court denies Plaintiff's Motion given that the analysis of the inherent

7

conflict of interest of Defendant is not relevant to what appears to be a simple matter of interpretation of the Plan.

        IT IS SO ORDERED.

                                      S/Christopher A. Boyko
                                      CHRISTOPHER A. BOYKO
                                      United States District Judge